msjIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| ISTICK CAPITAL MANAGEMENT, LLC, § § § | |
| Plaintiff/Counter-Defendant, § § | |
| v. § § | Civil Action No. 7:20-cv-00134-O |
| ARENA LIMITED SPV, LLC, § § § | |
| Defendant/Counter-Plaintiff. § | |

## MEMORANDUM OPINION & ORDER

Before the Court are Plaintiff's Motion for Summary Judgment (ECF Nos. 28–31), filed on May 2, 2021; Defendant's Response and Objection (ECF Nos. 33–35), filed on May 24, 2021; Defendant's Motion for Summary Judgment (ECF Nos. 36–38), filed on June 4, 2021; Plaintiff's Response and Objection (ECF Nos. 39–41), filed on June 25, 2021; and Defendant's Reply (ECF No. 41), filed July 7, 2021. Having considered the motions, briefing, and applicable law, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion (ECF No. 28) and **GRANTS in part** and **DENIES in part** Defendant's Motion (ECF No. 36).

**I.    BACKGROUND**

This contract dispute arises from a loan and conveyance of a non-possessory interest and ownership of overriding royalty interests in property in Wichita County, Texas. On February 23, 2017 (the "Closing Date"),[1] Plaintiff/Counter-Defendant iStick Capital Management, LLC ("iStick") and Defendant/Counter-Plaintiff Arena Limited SPV, LLC ("Arena") entered the "Term

---

[1] This date is called interchangeably the "Closing Date" and the "Effective Date," which is defined in Section 1.2 as "the date on which the conditions specified in Section 3.1 are satisfied." *See* Def.'s App. 18, ECF No. 35; *see also*, Def.'s App. 120, ECF No. 35 (Form of Assignment of ORRI (Exhibit D)).

1

Loan Agreement" (the "Agreement"). Def.'s App. 9, ECF No. 35.[2] Through the Agreement, iStick conveyed to Arena the "Assignment of ORRI (North Texas)" (the "ORRI"), paid as "a one percent (1%) overriding royalty interest in all Hydrocarbons produced, saved, and marketed . . . for a period of two (2) years following the Closing Date." Def.'s App. 17, ECF No. 35 (Section 1.2). The Agreement required minimum monthly oil production to satisfy the ORRI payments, excusing specific force majeure events which might prevent the minimum production. Def.'s App. 66–67, ECF No. 35 (Section 6.25) (excusing the failure to meet minimum monthly production requirements when "such failure is due to . . . (b) flood, . . . [or] (d) action by any Governmental Authority . . . during the period in which such act or event described . . . shall have occurred."). Upon the end of the two-year assignment period (the "Expiration Date"), iStick would retain a one-half reversion interest in the ORRI if no "Event of Default" had occurred during the assignment term and iStick had fully and timely repaid the Loan. Def.'s App. 46, ECF No. 35 (Section 2.20(b)).[3] In return, Arena extended a loan (the "Loan") to iStick. Def.'s App. 2–3, 134, ECF No. 35. Upon full repayment of the Loan, iStick would acquire a right to repurchase a one-half interest in the ORRI at a pre-determined value. Def.'s App. 46, ECF No. 35 (Section 2.20(c)).[4]

---

[2] The content of the Term Loan Agreement and incorporated documentation is identical in Arena's and iStick's motion and response appendices. *Compare* Def.'s App. 9–181, ECF Nos. 35, 38; *with* Pl.'s App. 5–184, ECF Nos. 30, 41. Thus, for the purposes of this order and for brevity, the Court cites only to Defendant's Appendix as representative of the undisputed content of the Term Loan Agreement.

[3] "(b) upon the expiration of the Assignment of ORRI (North Texas) and if . . . no Event of Default has occurred, final payoff occurs . . ., all scheduled reductions of the Loan Balance have been paid . . . and all payments of interest due hereunder have been paid . . ., one-half of the ORRI conveyed pursuant the Assignment of ORRI (North Texas) shall revert to Borrowers;" Def.'s App. 46, ECF No. 35 (Section 2.20(b)).

[4] "(c) Borrowers shall have the right . . . but not the obligation, and only if such final payoff occurs as scheduled . . ., all scheduled reductions of the Loan Balance have been paid . . . and all payments of interest due hereunder have been paid . . . to repurchase . . . one-half conveyed pursuant the Assignment of ORRI (North Texas), at any time during the 6-month period immediately following the final payoff of the Term Loan . . . ." Def.'s App. 46, ECF No. 35 (Section 2.20(c)).

Nine months after the Closing Date, iStick failed to meet the Agreement's production quota. Def.'s App. 4, 66–67, ECF No. 35. iStick requested a waiver for its failure to perform and credited the failure to flooding and governmental authority interference, which each constitutes a force majeure excuse under the Agreement. Def.'s App. 66, ECF No. 35 (Section 6.25). On March 9, 2018—eleven months before the Expiration Date—iStick fully repaid the Loan, beginning its six-month option to repurchase one-half of the ORRI from Arena at a pre-determined value. Def.'s App. 199–203, ECF No. 35 (Payoff Letter); *see also* Def.'s App. 46, ECF No. 35 (Section 2.20(c)). But iStick did not exercise the repurchase option by September 9, 2018, so the option lapsed. Def.'s App. 6, ECF No. 35 (Decl. of White).

In August 2020, iStick sued Arena in state court in Wichita County, alleging a claim for trespass to try title and seeking a declaratory judgment about the ownership of the ORRI. *See* Orig. Pet., ECF No. 1-3. Arena removed and asserted a declaratory judgment counterclaim, rebutting iStick's ownership contentions. *See* Not. of Removal 1, ECF No. 2. Both parties move, in cross motions, for summary judgment as to all claims and counterclaims. *See* Pl.'s Mot. 2, ECF No. 28; Def.'s Mot. 1, ECF No. 36. The motions are now ripe for the Court's consideration. *See* Def.'s Resp., ECF Nos. 33–35; Pl.'s Resp., ECF Nos. 39–41; Def.'s Reply, ECF No. 41.

## II.   LEGAL STANDARD

The Court may grant summary judgment where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotation marks omitted).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis of its motion and demonstrate from the record that no genuine dispute as to any material fact exists. *See Celotex*, 477 U.S. at 323. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

When reviewing the evidence on a motion for summary judgment, courts must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. If there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion. *Id.* at 250.

### III. ANALYSIS

Arena requests summary judgment as to all claims, contending that as a matter of law (1) Arena owns 100% of the ORRI and (2) iStick cannot recover under its trespass-to-try-title claim because the cause of action does not extend to non-possessory interests. Def.'s Mot. 1, ECF No. 36 (citing the Agreement, Section 2.20(b)). In its cross-motion, iStick also seeks summary judgment as to all claims, contending that as a matter of law (1) iStick owns 100% of the ORRI and (2) iStick may recover for its trespass-to-try-title claim based on a non-possessory interest. *See*

Pl.'s Mot. 7, ECF No. 29 (citing Def.'s App. 17, ECF No. 35 (Section 1.2)). The Court first addresses the declaratory judgment requests.

### A. iStick's Excused Default

According to Arena, a one-half reversion of the ORRI to iStick was "expressly conditioned on [during the term of the Agreement] the non-occurrence of an 'Event of Default,'" which, in fact, occurred when iStick failed to meet the Agreement's oil production output requirement. Def.'s Resp. 2, ECF No. 33 (citing Def.'s App. 46, 67, ECF No. 35 (Sections 2.20(b) and 7.1)). Conceding it failed to meet the output requirement, otherwise an "Event of Default," iStick argues that performance was excused because it resulted from flooding and government interference, covered under the Agreement's force majeure clause, so no unexcused "Event of Default" occurred. *See* Pl.'s Resp. 4, ECF No. 40 (citing the Agreement, Section 6.25). In reply, Arena does not object that the flooding or government interference actually occurred; instead, it contends that iStick defaulted by requesting a waiver from Arena for the underproduction without expressly attributing it to an force majeure excuse. *See* Def.'s Reply 10, ECF No. 44. The Court concludes that the flooding, governmental authority interference, or both excused iStick's failure to perform, so no unexcused "Event of Default" occurred.

Force majeure clauses in contracts are enforceable under Texas law. *See GT & MC, Inc. v. Texas City Ref., Inc*, 822 S.W.2d 252, 259 (Tex. App.—Houston [1st Dist.] 1991, writ denied). While force majeure intertwines with impossibility of performance, the scope and application of a force majeure clause depends on (1) the terms of the contract, and (2) whether the events causing the nonperformance were outside of the "reasonable control" of the nonperforming party. *See Perlman v. Pioneer Ltd. P'ship*, 918 F.2d 1244, 1248 (5th Cir. 1990); *Sun Operating Ltd. P'ship v. Holt*, 984 S.W.2d 277, 282–83 (Tex. App.—Amarillo 1998, pet. denied) ("[W]hen the parties

have themselves defined the contours of force majeure in their agreement, those contours dictate the application, effect, and scope of force majeure"); *see also*, *Sherwin Alumina L.P. v. AluChem, Inc*, 512 F. Supp 2d. 957, 966 (S.D. Tex. 2007) (where force majeure clause in chemical contract was unenforceable because the air quality testing requirements were within producer's reasonable control).

Here, the Agreement excuses the failure to meet minimum monthly production requirements when "such failure is due to . . . (b) flood, . . . [or] (d) action by any Governmental Authority . . . during the period in which such act or event described . . . shall have occurred." Def.'s App. 66, ECF No. 35 (Section 6.25). And such a force majeure event—namely, flooding and government interference—occurred, thereby excusing iStick's failure to perform.[5] *See* Pl.'s App. 2, ECF No. 30. Because no unexcused "Event of Default" occurred upon the expiration of the assignment of the ORRI, satisfying the condition precedent to Section 2.20(b)'s reversion provision, one-half of the ORRI reverted to iStick upon the Expiration Date. *See* Def.'s App. 46, ECF No. 35 (Section 2.20(b)). Accordingly, the Court concludes as a matter of law that iStick owns this one-half interest in the ORRI. Thus, the Court will grant iStick's motion and deny Arena's motion in this respect.

### B. Effect of iStick Declining to Exercise the Repurchase Option

Arena maintains that it owns the remaining half of the ORRI conveyed from iStick to Arena because the plain language of Section 2.20(c) required iStick to exercise its repurchase option within six months of iStick fully repaying the Loan for it to obtain the one-half interest and, though

---

[5] Arena's notice argument is of no moment. Even assuming failure to notify could trump the excuse provision in the Agreement (which the Court doubts), iStick notified Arena of the flooding and governmental authority interference leading to the shortage via weekly meetings and phone calls, *see* Pl.'s App. 2, ECF No 30, as evidenced by Arena's not objecting to the underproduction as an event of default at the time and not charging iStick default interest during the final payout of the Agreement. *See* Pl.'s App. 3, ECF No 30.

iStick repaid in full, it failed to exercise that option. Def.'s Mot. 3, ECF No. 36; *see also* Def.'s Resp. 2, ECF No. 33. iStick concedes it did not exercise the repurchase option but, instead, owns the remaining portion of the ORRI because the ORRI was subject to a two-year term after which Arena's interest expired and reverted to iStick automatically, regardless of its exercise of the repurchase option. *See* Pl.'s Mot. 7, ECF No. 29 (citing Def.'s App. 17, ECF No. 35 (Section 1.2)); *see also* Pl.'s Resp. 2, ECF No. 39. The Court concludes that the ORRI did not automatically revert to iStick after the two-year term, so iStick was required to exercise the repurchase option for the half interest to revert to it.

     At the summary judgment stage, a court must determine whether a disputed contract term presents an ambiguous term, creating a trial issue of fact; if not, it may construe the contract as a matter of law. *See Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex. 1983). "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Id.* (citing *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980)); *Philadelphia Am. Life Ins. Co. v. Turner*, 131 S.W.3d 576, 587 (Tex. App.—Fort Worth 2004, no pet) (The goal of contract interpretation is "to ascertain the true intentions of the parties as expressed in the instrument."). "If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous . . .." *Id.*; *see also Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996) ("An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract."). Courts are "bound to read all parts of a contract together to ascertain the agreement of the parties. The contract must be considered as a whole. Moreover, each part of the contract should be given effect." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994) (citations omitted). Thus, "[n]o one phrase,

sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions." *Id.* at 134.

Here, iStick paid the Loan in full on March 9, 2018, approximately eleven months before the Expiration Date (February 22, 2019). *See* Def.'s App. 17, ECF No. 35 (Section 1.2). The Court need not guess what happened to the ORRI at the Expiration Date and at the lapse of the repurchase option because the unambiguous operation of Sections 2.20(b) and 2.20(c) gives the answer: the one-half interest contemplated in Section 2.20(b) reverted to iStick and the one-half interest in Section 2.20(c) remained with Arena.

Under Section 2.20(b), upon the Expiration Date, if no Event of Default occurred and all payments were made, one-half of the ORRI reverted to iStick. *See* Def.'s App. 46, ECF No. 35 (Section 2.20(b)). Section 2.20(b) has no effect at all until "the expiration of the Assignment." *See id.* Indeed, upon the expiration of the Assignment, those conditions were satisfied here, so one-half of the ORRI reverted to iStick on February 22, 2019, even though the payment conditions had been satisfied five months earlier. *See infra* Part III(A).

Under Section 2.20(c), when the same payments as outlined in Section 2.20(b) were satisfied on March 9, 2018, iStick immediately acquired a right to repurchase one half of the ORRI for a set value until September 9, 2018, six months later. *See* Def.'s App. 199, ECF. No. 35 (Payoff Letter); *see also* Def.'s App. 46, ECF No. 35 (Section 2.20(c)). iStick declined to exercise the option within six months, so the option lapsed five months before the Expiration Date. According to iStick's construction, the one-half interest reverted to iStick at Expiration Date regardless of its exercising the repurchase option beforehand.

While iStick's construction may provide *ipso facto* clarity to the actual occurring events, its construction breaks down when viewing the Agreement as a whole and in context. *See Forbau*,

8

876 S.W.2d at 133. Consider if iStick had paid the Loan in full on the Expiration Date. Under iStick's reading of Section 2.20(c) with Section 1.2, iStick should have acquired a six-month option to re-purchase a one-half interest in the ORRI. But, strangely enough, in that scenario, iStick's option is an option to repurchase the interest that, under its own construction, had already reverted to iStick at the Expiration Date. Under these facts, Section 2.20(c) would be rendered entirely meaningless. The Court presumes that two sophisticated parties would not have included a superfluous option to repurchase under the very likely condition that the debtor paid its debt on the due date and, thus, declines to adopt iStick's construction. *See, e.g.*, *Atmos Energy Corp. v. Paul*, 598 S.W.3d 431, 454 (Tex. App.—Fort Worth Mar. 5, 2020, no pet.) (rejecting a contract interpretation that "render[ed] provisions of the [a]greement meaningless."). Thus, though the one-half interest contemplated in Section 2.20(b) reverted to iStick upon the Expiration Date, no such automatic reversion of the half interest contemplated in Section 2.20(c) occurred without iStick exercising its repurchase option.

To achieve iStick's desired outcome, the parties could have chosen to expand the scope of Section 2.20(b) to include 100% the ORRI reverting back to iStick at the conclusion of the Expiration Date and to extend Section 2.20(c)'s buy-back option only until then. Alternatively, the parties could have included express language in Section 2.20(c) to revert the remaining half interest to iStick upon lapse of the repurchase option. They did neither, and the Court declines to construe the Agreement as if they did by viewing Sections 1.2 and 2.20(c) in a vacuum. *See, e.g.*, *Forbau*, 876 S.W.2d at 134 ("No one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions.")

Accordingly, the Court finds the Agreement unambiguous when considered as a whole. By iStick's declining to exercise its repurchase option within the six-month window, the option lapsed,

9

no automatic reversion occurred, and Arena retained the half interest in the ORRI. Thus, the Court will grant Arena's motion and deny iStick's motion in this respect.

### C. iStick's Trespass-to-Try-Title Claim

iStick contends that Arena has refused to release a property interest in the ORRI despite iStick's alleged superior title resulting from the expiration of the ORRI. Pl.'s Mot. 8, ECF No. 31. Arena contends that iStick's trespass-to-try-title claim fails as a matter of law because the cause of action does not apply to a non-possessory interest in property. Def.'s Resp. 1, ECF No. 33. The Court agrees: a Texas trespass-to-try-title claim does not extend to protect nonpossessory property interests.

"A trespass to try title action is the method of determining title to lands, tenements, or other real property." Tex. Prop. Code § 22.001; *see, e.g., Sanghera v. Wells Fargo Bank*, N.A., No. 3:10–cv–2414–B, 2012 WL 555155, 9-10 (N.D. Tex. 2012). The trespass-to-try-title statute "is typically used to clear problems in chains of title or to recover possession of land unlawfully withheld from a rightful owner." *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004). While an overriding royalty is an interest in land, "it is clearly non-possessory, and hence the owner is not entitled to possessory remedies, *e.g.,* trespass to try title in Texas . . . ." *T-Vestco Litt-Vada v. Lu-Cal One Oil Co.*, 651 S.W.2d 284, 291 (Tex. App.—Austin 1983, no pet.); *see also Glover v. Union Pacific R. Co.*, 187 S.W.3d 201, 210 (Tex. App.—Texarkana 2006, no pet.) ("Because trespass to try title is a possessory remedy, however, a nonpossessory interest such as an overriding royalty interest is not suitable for a trespass-to-try-title suit.").

Here, the interest in dispute is an overriding royalty interest, which is a non-possessory interest in property. Because Texas courts have limited trespass-to-try-title claims to possessory

10

interests, this Court, too, declines to expand the claim's reach. Thus, iStick's trespass-to-try-title claim fails as a matter of law, so the Court will grant Arena's motion in this respect.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion for Summary Judgment (ECF No. 28) and **GRANTS in part** and **DENIES in part** Defendant's Motion for Summary Judgment (ECF No. 36). The Court **GRANTS** iStick's request for declaratory judgment, insofar as, iStick owns 50% of the subject overriding royalty interest pursuant to Section 2.20(b) of the February 23, 2017 Term Loan Agreement and **DENIES** Arena's request for declaratory judgment to the contrary. The Court **GRANTS** Arena's request for declaratory judgment, insofar as, Arena owns the remaining 50% of the subject overriding royalty interest pursuant to Section 2.20(c) of the February 23, 2017 Term Loan Agreement and **DENIES** iStick's request for declaratory judgment to the contrary. The Court **GRANTS** Arena's request for summary judgment as to iStick's trespass-to-try-title claim, which is hereby **DISMISSED with prejudice**, and **DENIES** iStick's motion for summary judgment to the contrary.

Based on the rights and obligations under the Agreement between the parties, the Court **DECLARES** as a matter of law that:

- iStick owns 50% of the subject overriding royalty interest pursuant to Section 2.20(b) of the February 23, 2017 Term Loan Agreement.

- Arena owns the remaining 50% of the subject overriding royalty interest pursuant to Section 2.20(c) of the February 23, 2017 Term Loan Agreement.

Pursuant to Federal Rule of Civil Procedure 58(a), a final judgment shall issue separately.

**SO ORDERED** on this **5th day** of **August, 2021**.

Reed O'Connor
UNITED STATES DISTRICT JUDGE